UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARK ANTHONY HENDERSON, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:20-cv-559 (SRU) |
| | : | |
| WARDEN AMONDA HANNAH[1] and | : | |
| ADMISSION/PROPERTY ROOM | : | |
| OFFICER DIAZ, | : | |
| Defendants. | : | |

## **INITIAL REVIEW ORDER**

On April 27, 2020, Mark Anthony Henderson, a sentenced inmate then-confined at

Cheshire Correctional Institution ("Cheshire"),[2] brought this *pro se* action pursuant to 42 U.S.C.

§ 1983.  *See* Compl., Doc. No. 1.  In it, Henderson alleges that two officials at Garner

Correctional Institution ("Garner")—Warden Amonda Hannah and Admission/Property Room

Officer Diaz (collectively, the "Defendants")—violated Henderson's right under the Eighth

Amendment to be free from cruel and unusual punishments.  More specifically, Henderson

alleges that the Defendants displayed deliberate indifference to his serious medical needs by not

issuing him a new mattress.  *See id.* at ¶¶ 1–14.  Henderson seeks damages and injunctive relief.[3]

*See id.* at 12 (request for relief).

---

[1]  The Clerk is instructed to amend the caption to reflect the correct spelling of Ms. Hannah's last name. *See* Garner Corr. Inst., *CT State Dep't of Corr.*, https://portal.ct.gov/DOC/Facility/Garner-CI (last visited July 31, 2020); *see also* Fed. R. Evid. 201(b); *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (court may "take judicial notice of relevant matters of public record").

[2]  According to the DOC's inmate information web page, Henderson is no longer confined at Cheshire but, rather, at Corrigan-Radgowski Correctional Center.  *See Mark Henderson*, Inmate Information, *CT State Dep't of Corr.*, http://www.ctinmateinfo.state.ct.us (enter Henderson's name or inmate number 382714) (last visited July 31, 2020); *see also* Notice, Doc. No. 12.

[3]  Henderson does not specify whether he sues the Defendants in their official or individual capacities.  I construe the complaint most broadly to allege claims against the Defendants in both their official and individual capacities because Henderson has requested both monetary and injunctive relief.  A plaintiff may seek injunctive relief under Section 1983 only by suing a state official in his or her official capacity.  *See Altayeb v. Chapdelaine*, 2016 WL 7331551, at *3 (D. Conn. Dec. 16, 2016).  Henderson may not seek money damages against either

1

For the following reasons, I permit Henderson's Eighth Amendment claim to proceed against Warden Hannah in her individual capacity for damages.

## I.     Standard of Review

Under 28 U.S.C. § 1915A, I must review a prisoner civil complaint and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II.     Facts[4]

Henderson suffers from:  (1) severe sciatica pain from osteoarthritis of the lumbar spine, (2) a completely torn rotator cuff in his right shoulder, (3) medial compartmental osteoarthritis of

---

defendant in their official capacities because those claims are barred by the Eleventh Amendment. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

[4] All of the following facts are taken from Henderson's complaint and are assumed true for the purposes of this initial review order.

the right knee, and (4) osteoarthritis of the left shoulder joint.[5]  Compl., Doc. No. 1, at ¶ 1.

Henderson arrived at Garner on October 1, 2019 to begin Phase 2 of his administrative

segregation program.  *See id.* at ¶ 2.  Upon his arrival, an admission and property officer at

Garner provided Henderson with a very old mattress on which Henderson was unable to sleep,[6]

and so Henderson "woke up in extreme pain throughout the night."  *Id.* at ¶¶ 2–3.  Thus, on

November 18, 2019, Henderson wrote to his unit manager to request a new mattress.  *Id.*  In that

request, Henderson explained that his mattress was old, had lost its compression, and was

"irritating [his] medical condition of osteoarthritis."  *Id.* at ¶ 3; *id.* at 27 (Inmate Request Form).

On November 19, 2019, Henderson received a response, stating that Admission and Property

Officer Diaz would put Henderson on the list for a new mattress.  *Id.* at ¶ 4; *id.* at 27 (Inmate

Request Form).

But Henderson did not receive a new mattress.  Due to the severe pain caused by his

lying on the compressed mattress, Henderson was unable to sleep for more than an hour at a

time; he would pace in his cell when he could not sleep.  *See id.* at ¶ 5.  So, on December 10,

2019, Henderson filed a grievance regarding his need for a mattress.  *See id.* at ¶ 6; *id.* at 28

(Inmate Administrative Remedy Form).  Henderson indicated that the old, flat mattress he was

issued upon admission to Garner had lost its compression and required replacement and that he

had previously requested a new mattress on November 18.  *See id.* at ¶ 6.

On January 29, 2020, Warden Hannah wrote to Henderson to give him a "compromised

disposition."  *See id.* at ¶ 7.  Warden Hannah explained, in part: "You will be issued a mattress

---

[5] Henderson has submitted medical records to substantiate his allegations of suffering from those conditions.  *See* Compl., Doc. No. 1, at 14–22.

[6] Henderson alleges that the mattresses that the DOC issues have low 60- to 70-pound compression rates that wear out from use by inmates weighing more than 150 pounds.  *See* Compl., Doc. No. 1, at ¶ 10.

when deemed necessary."[7]  *Id.* at ¶ 7.  Henderson was not able to file an appeal because he had

exhausted his administrative remedies regarding his mattress complaint.  *See id.* at ¶¶ 7–8.

### III.    Discussion

The Eighth Amendment's prohibition against cruel and unusual punishments "places

restraints" and imposes duties on prison officials to provide humane conditions of confinement.

*Farmer v. Brennan,* 511 U.S. 825, 832 (1994).  Thus, the Eighth Amendment protects against

punishments that "involve the unnecessary and wanton infliction of pain."  *Gregg v. Georgia*,

428 U.S. 153, 173 (1976).  Although the Constitution does not require "comfortable" prison

conditions, the Eighth Amendment requires prison officials to "ensure that inmates receive

adequate food, clothing, shelter and medical care," and to "take reasonable measures to

guarantee the safety of the inmates."  *Farmer*, 511 U.S. at 832–33 (cleaned up).

To state a claim for deliberate indifference to health or safety under the Eighth

Amendment, an inmate must demonstrate both an objective and a subjective element.  To meet

the objective element, an inmate must allege that he was incarcerated under conditions that

resulted in a "sufficiently serious" deprivation, such as the denial of "life's necessities" or a

"substantial risk of serious harm."  *Id.* at 834 (cleaned up).  To meet the subjective element, an

inmate must allege that the defendant prison officials possessed culpable intent, that is, that the

officials knew that the inmate faced a substantial risk to his health or safety and disregarded that

risk by failing to take corrective action.  *See id.* at 834, 837.  Thus, an allegation of merely

negligent conduct is insufficient to support an Eighth Amendment claim.  *Id.* at 835.  Rather, the

subjective element requires that a plaintiff allege that prison officials acted with "a mental state

---

[7]  Henderson himself notes that this was only part of Warden Hannah's response, but he does not include the other portions of her response.

equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006).

Because "sleep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment," a prisoner can raise a constitutional claim that his mattress is "so inadequate as to constitute an unconstitutional deprivation." *See Walker v. Schult*, 717 F.3d 119, 126–27 (2d Cir. 2013). To establish an Eighth Amendment claim alleging a deficient mattress, courts have required a prisoner plaintiff to allege either (1) that he had a medical condition requiring a non-standard mattress to protect against further serious damage to his health or (2) that the inadequate mattress actually caused the medical condition. *See Jones v. City of New York*, 2020 WL 1644009, at *7 (S.D.N.Y. Apr. 2, 2020) (citing cases).

Here, Henderson has sufficiently alleged that he had an objectively serious need for a non-compressed mattress because his compressed mattress caused him sleep deprivation and severe pain due to his chronic conditions of osteoarthritis and a torn rotator cuff in his right shoulder. *See id.* at *8 (finding objective element satisfied where allegations "g[a]ve rise to a plausible, common-sense inference that the standard-issue mattress either exacerbates or causes Plaintiff's chronic and substantial back pain").

Regarding the subjective element, Henderson has plausibly alleged (although very weakly) that Warden Hannah (but not Officer Diaz) acted with a conscious disregard for his health. Henderson alleges that—by filing a grievance—he made Warden Hannah aware of his chronic osteoarthritis and the torn rotator cuff in his right shoulder and that his mattress was "irritating" his chronic conditions and causing him medical problems. *See* Compl., Doc. No. 1, at ¶¶ 5–6. Warden Hannah responded to Henderson's grievance, and her alleged partial response

5

(that Henderson would be issued a new mattress "when deemed necessary") is ambiguous. *See id.* at ¶ 7. I recognize that the present record lacks Warden Hannah's full response to Henderson's grievance. Further, it is unclear whether Warden Hannah is responsible for determining whether Henderson should be afforded a new mattress. At this early stage, though, I must construe the facts most favorably to Henderson. Thus, for purposes of this initial review, I conclude that Henderson has plausibly alleged that Warden Hannah acted with a conscious disregard for Henderson's serious medical need. Henderson has plausibly alleged that he informed Warden Hannah that his being forced to use a compressed mattress was causing him severe pain, sleep deprivation, and was exacerbating his existing, chronic medical conditions. And Henderson has plausibly alleged that Warden Hannah did not act on that information—she neither facilitated a review regarding whether it might be necessary to issue Henderson a new mattress, nor herself ordered that Henderson be issued a new mattress. Thus, I permit Henderson's Eighth Amendment claim to proceed against Warden Hannah in her individual capacity.

Henderson has not, however, alleged sufficient facts to establish that Officer Diaz acted with deliberate indifference to Henderson's need for a new mattress. Henderson has alleged only that Officer Diaz should have received an email instructing Officer Diaz that Officer Diaz should place Henderson on the new mattress list. *See* Compl., Doc. No. 1, at ¶ 4; *id.* at 27 (Inmate Request Form). Henderson has not alleged any facts suggesting that Officer Diaz received that email or that Officer Diaz had been provided any information about Henderson's chronic medical conditions or sleep deprivation. Thus, I dismiss without prejudice Henderson's claim

against Officer Diaz in Officer Diaz's individual capacity because it fails to plausibly allege the subjective component of the Eighth Amendment analysis.

I deny as moot Henderson's request for injunctive relief against Warden Hannah and Officer Diaz in their official capacities. When a party sues a state official in his or her official capacity, "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief . . . and may not include a retroactive award which requires the payment of funds from the state treasury." *Edelman v. Jordan,* 415 U.S. 651, 677 (1974); *Ex parte Young*, 209 U.S. 123, 155–56 (1908). However, "an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *See Washington v. McKoy*, 2020 WL 3042122, at *1 (2d Cir. 2020) (citing *Salahuddin*, 467 F.3d at 272); see also *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility.") Quite clearly, Henderson is no longer housed at Garner. *See supra* n.2 and accompanying text. Therefore, Henderson's request for injunctive relief from the Defendants in their official capacities is now moot. Accordingly, I dismiss Henderson's claims against the Defendants in their official capacities.

## ORDERS

(1) The case shall proceed on Henderson's Eighth Amendment claim against Warden Hannah in her individual capacity for damages.

All other claims are DISMISSED. If Henderson believes he can allege facts to cure the deficiencies identified in this ruling, he may file a motion to amend and attach an amended complaint within **thirty (30) days** from the date of this order.

(2) The clerk shall verify the current work addresses for Warden Hannah with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to her at her confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing.  If the defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on the defendant, and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(4) **Warden Hannah** shall file her response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If **Warden Hannah** chooses to file an answer, she shall admit or deny the allegations and respond to the cognizable claims recited above.  She may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26–37, shall be completed within **six months (180 days)** from the date of this Order.  Discovery requests need not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court.  The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed within **seven months (210 days)**

from the date of this Order.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  He should also notify the defendants or defense counsel of his new address.

(10) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  Plaintiff is advised that the Program may be used only to file documents with the court.  Local court rules provide that discovery requests are not filed with the court.  D. Conn. L. Civ. R. 5(f).  Therefore, discovery requests must be served on defendants' counsel by regular mail.

It is so ordered.

Dated at Bridgeport, Connecticut this 31st day of July 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

9