UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARK ANTHONY HENDERSON,<br>　　Plaintiff, | :<br>:<br>: |
| v. | :　　No. 3:20-cv-559 (SRU)<br>: |
| WARDEN AMONDA HANNAH and<br>ADMISSION/PROPERTY ROOM<br>OFFICER DIAZ,<br>　　Defendants. | :<br>:<br>:<br>: |

## **INITIAL REVIEW ORDER OF AMENDED COMPLAINT**

On April 27, 2020, Mark Anthony Henderson, a sentenced inmate then-confined at Cheshire Correctional Institution ("Cheshire"),[1] brought this *pro se* action pursuant to 42 U.S.C. § 1983. *See* Compl., Doc. No. 1. In it, Henderson alleged that two officials at Garner Correctional Institution ("Garner")—Warden Amonda Hannah and Admission/Property Room Officer Diaz (collectively, the "Defendants")—violated Henderson's right under the Eighth Amendment to be free from cruel and unusual punishments. More specifically, Henderson alleged that the Defendants displayed deliberate indifference to his serious medical needs by not issuing him a new mattress. *See id.* at ¶¶ 1–14. Henderson requested damages and injunctive relief. *See id.* at 12.

On July 31, 2020, I issued an initial review order regarding Henderson's complaint. In that initial review order, I permitted Henderson's Eighth Amendment claim to proceed against Warden Hannah in her individual capacity. *See* Order, Doc. No. 13, at 2, 5–6. I dismissed without prejudice Henderson's Eighth Amendment claim against Officer Diaz in his individual

---

[1] Henderson is now confined at Corrigan-Radgowski Correctional Center. *See Mark Henderson*, Inmate Information, *CT State Dep't of Corr.*, http://www.ctinmateinfo.state.ct.us (enter Henderson's name or inmate number 382714) (last visited Oct. 16, 2020); *see also* Notice, Doc. No. 12.

1

capacity because Henderson had not plausibly alleged that Officer Diaz acted with deliberate indifference to Henderson's need for a new mattress.  *Id.* at 6.  More specifically, Henderson had alleged only that Officer Diaz "should have received an email" instructing him to place Henderson on the new mattress list; but Henderson had not alleged any facts suggesting that Officer Diaz had received that email or been provided any information about Henderson's chronic medical conditions or sleep deprivation.  *Id.* at 5.  I also dismissed as moot Henderson's Eighth Amendment claims against the Defendants in their official capacities because Henderson is no longer housed at Garner—he now resides at Corrigan-Radgowski Correctional Center ("Corrigan")—and "an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."  *See id.* at 7 (quoting *Washington v. McKoy*, 816 F. App'x 570, 572–73 (2d Cir. 2020)) (cleaned up).

On August 10, 2020, Henderson filed an amended complaint.  *See* Am. Compl., Doc. No. 16.  On August 12, Henderson filed a motion to amend/correct his amended complaint and attached the most up-to-date version of his amended complaint.  *See* Mot. to Am./Correct, Doc. No. 17; Am. Compl., Doc. No. 17-1.  On September 1, 2020, I granted Henderson's motion to amend/correct his amended complaint.  *See* Order, Doc. No. 19.  I now consider whether Henderson's amended complaint has stated plausible claims against the Defendants in both their individual and official capacities.  I conclude that Henderson's Eighth Amendment claims may proceed against Warden Hannah and Officer Diaz only in their individual capacities.

**I.      Standard of Review**

Under 28 U.S.C. § 1915A, I must review a prisoner civil complaint and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief

2

may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

**II.     Facts**

Henderson suffers from:  (1) severe sciatica pain from osteoarthritis of the lumbar spine, (2) a completely torn rotator cuff in his right shoulder, (3) medial compartmental osteoarthritis of the right knee, and (4) osteoarthritis of the left shoulder joint.  *See* Am. Compl., Doc. No. 17-1, at ¶ 1; *see also* Medical Records, Doc. No. 17-1, at 14–23 (substantiating Henderson's allegations of suffering from those conditions).  On October 1, 2019, Henderson arrived at Garner (from Cheshire) to begin Phase 2 of his administrative segregation program.  *See* Am. Compl., Doc. No. 17-1, at ¶¶ 2, 6.  Upon his arrival, Henderson was provided an old mattress; Henderson was unable to sleep on that mattress.  *See id.*  On November 18, 2019, Henderson wrote an Inmate Request to his unit manager to request a new mattress.  *See id.* at ¶ 2.  In that

request, Henderson explained that his mattress was old, had lost its compression, and was "irritating my medical condition of osteoarthritis." *Id.*; *see also id.* at 24 (Inmate Request).

Henderson received a response to his Inmate Request. That response stated: "I will email Diaz to place you on new mattress list." *See id.* at 24 (Inmate Request).[2] Although Henderson's subsequent account is not entirely clear, I construe Henderson's allegations most liberally as follows. After Henderson wrote his Inmate Request, a "CTO"—presumably a correctional training officer—"personally provided" a copy of Henderson's Inmate Request to Officer Diaz and also sent Officer Diaz an email regarding the issue. *Id.* at ¶ 3. Officer Diaz thus "received" both Henderson's Inmate Request and an email regarding Henderson's Inmate Request. *Id.* at ¶ 4. Henderson alleges that Officer Diaz was "solely responsible for the new mattress list and exchanging mattresses from inmates for their old ones." *Id.*

Still, Henderson did not receive a new mattress. Due to the severe pain caused by lying on the old mattress, Henderson was unable to sleep for more than an hour each night, and he would pace in his cell when he could not sleep. *Id.* at ¶ 5. On December 10, 2019, Henderson filed a grievance regarding his need for a new mattress. *Id.* at ¶¶ 5–6; *see also* Inmate Administrative Remedy Form, Doc. No. 17-1, at 30–31. Henderson indicated that the old, flat mattress he was issued upon admission to Garner was irritating his chronic medical conditions and that it had lost its compression and required replacement. *See* Inmate Administrative Remedy Form, Doc. No. 17-1, at 30–31. Henderson's grievance referenced his November 18 Inmate Request. *See id.*

---

[2] Although Henderson's amended complaint does not indicate when he received that response, Henderson's original complaint alleged that he received that response on November 19, 2019. *See* Compl., Doc. No. 1, at ¶ 4.

4

On January 29, 2020, Warden Hannah wrote to Henderson to give him a "compromised disposition." Am. Compl., Doc. No. 17-1, at ¶ 7. Warden Hannah explained, in part: "You will be issued a mattress when deemed necessary." *Id.*[3] Henderson was not able to file an appeal because he had exhausted his administrative remedies on his mattress complaint. *Id.* at ¶¶ 7–8. No mattress was provided. *Id.* at ¶ 8.

### III. Discussion

#### A. Official Capacity Claims

Because Henderson is still housed at Corrigan—rather than at Garner—Henderson's claims for injunctive relief against the Defendants in their official capacities are still moot for the same reasons that I articulated in my initial review order of Henderson's original complaint. *See* Order, Doc. No. 13, at 7.

#### B. Individual Capacity Claim against Warden Hannah

In my review of Henderson's initial complaint, I held that Henderson had plausibly alleged a claim for deliberate indifference against Warden Hannah in her individual capacity. *See id.* at 5–6. More specifically, I held that Henderson had "plausibly alleged that he informed Warden Hannah that his being forced to use a compressed mattress was causing him severe pain, sleep deprivation, and was exacerbating his existing, chronic medical conditions." *Id.* at 6. Henderson had also plausibly alleged that Warden Hannah "did not act on that information—she neither facilitated a review regarding whether it might be necessary to issue Henderson a new mattress, nor herself ordered that Henderson be issued a new mattress." *Id.* Henderson's

---

[3] In my initial review order of Henderson's initial complaint, I pointed out that Henderson himself noted that this was only part of Warden Hannah's response. *See* Order, Doc. No. 13, at 4 n.7. Henderson did not include the other portions of Warden Hannah's response. *See id.* Again, Henderson has not included other portions of Warden Hannah's response.

allegations regarding Warden Hannah in his amended complaint are substantively identical to those in his initial complaint. Thus, I need not review my prior conclusion with respect to Henderson's Eighth Amendment claim against Warden Hannah in her individual capacity—it still may proceed.[4]

### C. Individual Capacity Claim against Officer Diaz

To state a claim for deliberate indifference to health or safety under the Eighth Amendment, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, an inmate must allege that he was incarcerated under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of "life's necessities" or a "substantial risk of serious harm." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (cleaned up). To meet the subjective element, an inmate must allege that the defendant prison officials possessed culpable intent, that is, that the officials knew that the inmate faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See id.* at 834, 837. Thus, an allegation of merely negligent conduct is insufficient to support an Eighth Amendment claim. *Id.* at 835. Rather, the subjective element requires that a plaintiff allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006).

---

[4] In his amended complaint, Henderson mentions that he seeks to hold Warden Hannah liable based on a theory of supervisory liability. *See* Am. Compl., Doc. No. 17-1, at ¶¶ 9–10. One way to demonstrate a supervisory official's personal involvement in an alleged constitutional deprivation is by showing that that defendant "participated directly in the alleged constitutional violation." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). I held in my initial review order—and reaffirm here—that Henderson has plausibly alleged, however weakly, that Warden Hannah directly participated in an alleged constitutional violation by not acting on information about Henderson's failure to receive a new mattress. Order, Doc. No. 13, at 6. Thus, Henderson may proceed on his theory of supervisory liability.

Because "sleep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment," a prisoner can raise a constitutional claim that his mattress is "so inadequate as to constitute an unconstitutional deprivation." *Walker v. Schult*, 717 F.3d 119, 126–27 (2d Cir. 2013). To establish an Eighth Amendment claim alleging a deficient mattress, courts have required a prisoner plaintiff to allege either (1) that he had a medical condition requiring a non-standard mattress to protect against further serious damage to his health or (2) that the inadequate mattress actually caused the medical condition. *See Jones v. City of New York*, 2020 WL 1644009, at *7 (S.D.N.Y. Apr. 2, 2020) (citing cases).

As I have previously held, Henderson has sufficiently alleged that he had an objectively serious need for a non-compressed mattress because his compressed mattress caused him sleep deprivation and severe pain due to his chronic medical conditions. *See* Order, Doc. No. 13, at 5 (citing *Jones*, 2020 WL 1644009, at *9 (holding that objective element was satisfied where allegations "g[a]ve rise to a plausible, common-sense inference that the standard-issue mattress either exacerbates or causes Plaintiff's chronic and substantial back pain.")). Regarding the subjective element, I previously held that Henderson had not alleged sufficient facts "to establish that Officer Diaz acted with deliberate indifference to Henderson's need for a new mattress" because Henderson had "alleged only that Officer Diaz should have received an email instructing Officer Diaz that Officer Diaz should place Henderson on the new mattress list." *Id.* at 6. But, I explained, Henderson had "not alleged any facts suggesting that Officer Diaz received that email or that Officer Diaz had been provided any information about Henderson's chronic medical conditions or sleep deprivation." *Id.* Thus, I dismissed without prejudice Henderson's Eighth Amendment claim against Officer Diaz in his individual capacity.

7

Henderson's amended complaint (barely) cures the deficiency that I identified. More specifically, Henderson now indicates that Officer Diaz received (1) Henderson's November 18 Inmate Request and (2) an email instructing Officer Diaz to put Henderson on the new mattress list. *See* Am. Compl., Doc. No. 17-1, at ¶¶ 3–4. Henderson also alleges that Officer Diaz was "solely responsible" for facilitating the provision of new mattresses. *See id.* at ¶ 4. It is true that Officer Diaz's failure to provide Henderson a new mattress was merely negligent unless Officer Diaz acted with a conscious disregard to a substantial risk of serious harm to Henderson. *See Warwick v. Doe*, 2020 WL 2768804, at *6 (D. Conn. May 27, 2020) ("[T]he risk of harm must be substantial and the official's actions more than merely negligent") (quoting *Salahuddin*, 467 F.3d at 279–80). However, at this stage of the case I must construe Henderson's allegations most liberally. Thus, even if it is not likely that Officer Diaz acted recklessly, Henderson has plausibly alleged that Officer Diaz knew that Henderson's mattress was inadequate due to his medical conditions but did nothing to help remedy the situation. I will permit Henderson's Eighth Amendment claim to proceed against Officer Diaz in his individual capacity for damages.

## ORDERS

(1) This case shall proceed on Henderson's Eighth Amendment claim against Warden Hannah and Officer Diaz in their individual capacities for damages. Henderson's claims against those defendants in their official capacities are DISMISSED.

The clerk is instructed to docket the proposed amended complaint (Doc. No. 17-1) as the operative complaint in this action.

(2) The clerk shall verify the current work address for Officer Diaz with the DOC Office of Legal Affairs and mail a waiver of service of process request packet containing the amended

complaint (Doc. No. 17-1) and this Initial Review Order to him at that confirmed address within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing.

If Officer Diaz fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on Officer Diaz, and Officer Diaz shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

The docket reflects that Warden Hannah has already answered Henderson's amended complaint.  *See* Answer, Doc. No. 23.

 (3)  The clerk shall send a courtesy copy of the amended complaint (Doc. No. 17-1) and this Order to the DOC Office of Legal Affairs.

(4)  **Defendants** shall file their response to the amended complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If **Defendants** choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include any and all additional defenses permitted by the Federal Rules.

(5)  Discovery, according to Federal Rules of Civil Procedure 26–37, shall be completed within **six months (180 days)** from the date of this Order.  Discovery requests need not be filed with the Court.

(6)  The parties must comply with the District of Connecticut's "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court.  The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough only to put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  He should also notify the defendants or defense counsel of his new address.

(10) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  Plaintiff is advised that the Program may be used only to file documents with the court.  Local court rules provide that discovery requests are not to be filed with the court.  D. Conn. L. Civ. R. 5(f).  Therefore, discovery requests must be served on defendants' counsel by regular mail.

It is so ordered.

Dated at Bridgeport, Connecticut this 16th day of October 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge